[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
This case involves the appeal of Defendant/Appellant, Shawn Hagler, from his conviction for possession of cocaine. Following a jury verdict on the criminal charge, Hagler was sentenced to eight years in prison. On appeal, Hagler raises the following assignments of error:
 I. The trial court erred by denying Appellant's motion to suppress.
 II. The verdict is not supported by competent, credible evidence.
 III. The trial [court] erred in denying the defendant's requested jury instructions.
 IV. Appellant was denied his Sixth Amendment right to effective assistance of counsel.
After reviewing the record, we find no reversible error in the proceedings below, and affirm the conviction and sentence. A short discussion of our opinion follows.
 I
Shawn Hagler was arrested as the result of a surveillance operation at Mountcrest Courts in Dayton, Ohio. The operation arose from numerous citizen complaints about open-air drug trafficking in the Mountcrest area. In particular, the police had received complaints about 652 and 828 Mountcrest. On the evening of March 23, 1997, Officers Louderback and Houser were stationed in a nursing home across the street from the apartment complex. These officers were in a position to observe the parking lot and the entire courtyard of the complex, and were in radio contact with foot officers as well as officers in unmarked vehicles. The parking lot was well-lit, and Louderback was using binoculars to observe activity.
Shortly after the police arrived, and while they were setting up, a car pulled into the parking area right in front of 652 Mountcrest. A black male came out of the house, went up to the driver's side of the car, and exchanged something with the driver. The vehicle then left. About a half-hour later, a dark-colored Monte Carlo pulled into the same parking space. The car stereo was playing very loudly. A black male got out of the passenger side and hung around. A few minutes later, two women came out of 652 Mountcrest and talked to the man. One woman kept going back in and out of the apartment. Although Louderback did not see anything exchanged, he assumed something was exchanged.
The women went back in the apartment and the passenger got back in the car. Louderback then saw the Monte Carlo drive through the parking lot with its lights off and back into a parking stall in front of 828 Mountcrest. Louderback felt this was unusual, both because of the lack of lights and the manner of parking. The same black male again got out of the car and went into a blind spot area where Louderback could not see. About three minutes later, a gray or blue Monte Carlo drove into the Mountcrest area and pulled up almost right in front of where the first Monte Carlo was parked. At that time, the same black male approached the passenger side of the gray car and exchanged something very quickly. Based on his experience with several hundred drug sales, Louderback believed a drug sale had occurred.
The gray Monte Carlo drove off and the black male got back in his own car. At that point, Louderback decided to have the strike force do a field investigation on the Monte Carlo. Three officers (House, Kraft, and Hughes) were on foot in the apartment complex, and three more officers were in an unmarked station wagon. Officer House was in the rear side of the apartment building when he received the order to identify the people inside the Monte Carlo. House came up along the back side of the Monte Carlo, and was able to get within a foot without being detected by the occupants of the car. According to House, the unmarked station wagon was approaching the Monte Carlo and he could see that there were three people in the Monte Carlo — two in the front, and one in the back.
The station wagon stopped in front of the Monte Carlo, blocking its path, and officers jumped out of the passenger side of the wagon. House then shined his flashlight inside the Monte Carlo and was able to see that the occupants' attention was focused on the station wagon. At the same time, the other officers, who had their guns drawn, ordered the occupants to show their hands. The two people in the front put their hands in the air. However, House was able to observe the back-seat passenger (later identified as Shawn Hagler), reach into his coat and make a throwing motion towards the floorboard. At that point, House directed his flashlight onto the floorboard and saw two plastic baggies containing what appeared to be a rather large quantity of crack cocaine. Further, House saw several bills of U.S. currency scattered on the floorboard near Hagler's feet. These were the only items ever found on the floorboard. Hagler was then arrested for possession of the cocaine. At the time Hagler was arrested, the police also found a small quantity of marijuana in a plastic baggie in Hagler's pocket.
Before trial, Hagler moved to suppress all statements and all evidence obtained as a result of the detention and arrest. Following a suppression hearing, the trial court overruled the motion in part and granted it in part. In a lengthy decision, the court found that a seizure occurred at the time the officers blocked in the car, displayed weapons, and commanded a show of hands. As a result, the court found that the furtive action observed by Officer House could not be used to provide retroactive justification for the seizure. However, the court also found, based on the totality of the circumstances, that the officers had a "reasonable articulable suspicion" for the investigatory stop. Accordingly, the court refused to suppress the evidence obtained as a result of the stop. The court did suppress some statements Hagler made after being arrested, but before being advised of hisMiranda rights. These statements related to the amount of money Hagler had in his possession. Specifically, Hagler told the police he had about $150, but only $47 was found on his person. However, an additional $90 was found with the cocaine, meaning that the sum of the two amounts matched, or came close to matching the amount Hagler claimed to have had. The suppression of this evidence made little difference, as Hagler made the same statements to the police after being given Miranda warnings.
In the first assignment or error, Hagler contends that the trial court erred in its suppression decision by giving undue deference to the officers' opinions. In particular, Hagler argues that seizure is not warranted when activities that appear unlawful could just as easily be considered innocent behavior.
When a trial court's rulings on motions to suppress are reviewed, the trial court's findings of fact are accepted "if they are supported by competent, credible evidence." State v.Retherford, (1994), 93 Ohio App.3d 586, 592, discretionary appeal overruled, 69 Ohio St. 1488. After the facts are accepted as true, we decide "`as a matter of law, without deference to the trial court's conclusion,'" if the facts meet the applicable legal standard. Id (citations omitted). Further, when we weigh the trial court's legal determinations, we indulge all reasonable presumptions consistent with the lower court record. State v.Coppock (1995), 103 Ohio App.3d 405, 412 (citation omitted). Finally, no abuse of discretion will be found unless the record is "devoid of competent, credible evidence" to support the decision. Id.
For many years, the police have been able to stop and briefly detain people for investigative purposes based on a reasonable suspicion of criminal activity. Terry v. Ohio (1968), 392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889. However, a "[r]easonable suspicion entails some minimal level of objective justification for making a stop — that is, something more than an inchoate and unparticularized suspicion or `hunch,' but less than the level of suspicion required for probable cause." State v. Jones (1990),70 Ohio App.3d 554, motion for leave to appeal overruled (1991),59 Ohio St.3d 718. In Jones, we stressed that officers cannot rely on "good faith and inarticulate hunches." Id. at 557. Nonetheless, we recognized in Jones that "considerable deference [is given] to the observations of a trained officer and the conclusions drawn from * * * experience and special knowledge. Id. at 557-58 (citations omitted). Furthermore, the totality of the circumstances must be considered, with the circumstances being "viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold."State v. Andrews (1991), 57 Ohio St.3d 86, 88 (citations omitted).
Notably, in the Jones case, we found that evidence obtained as a result of the defendant's detention should be suppressed. InJones, an experienced drug enforcement officer was patrolling a high drug and crime area in an unmarked van, together with other officers, when he saw the defendant sitting in a car with a person who had been arrested and convicted of drug abuse about a year before. The officers had on clothing which identified them as police officers. Several people who were standing around the defendant's car left when they saw the unmarked van. According to the drug enforcement officer, the activities he observed were consistent with drug dealing. This conclusion was based on the officer's experience and the fact that the area was one involving high drug activity. During the field interview, the police discovered a handgun in the defendant's purse, and a later search also turned up heroin. Id. at 554-56. Based on these facts, we did not find a reasonable suspicion of criminal activity. In reaching this conclusion, we emphasized that "[a] person's mere presence in an area of high crime activity does not suspend the protections of the Fourth Amendment." Id. at 559 (citation omitted). While we still adhere to that view, we think suppression was not merited in the present case, due to sufficiently different circumstances.
In contrast to Jones, the stop in this case occurred as a result of police surveillance in an area specifically targeted by citizen complaints of open-air drug sales. After conducting surveillance, the officers found activity consistent, in their experience, with drug sales. In particular, the car in which the drugs were found stopped first at one apartment where drugs were reportedly being sold and then proceeded in a suspicious manner, without lights, to the location of other suspected drug activity. The occupants of the car then engaged in what appeared to the officer to be a typical drug transaction, i.e., a quick stop with exchanges being made. Under the totality of the circumstances, we agree with the trial court that Officer Louderback had a reasonable and articulable suspicion of criminal activity justifying the temporary detention of the car and its occupants.
To support the claim that suppression should have been granted, Hagler has cited a number of cases in which courts have observed, much as we did in Jones, that a reasonable and articulable suspicion does not exist simply because the defendant is present in an area of high criminal activity. For example, inState v. Arrington (1990), 64 Ohio App.3d 654, motion for leave to appeal overruled, 52 Ohio St.3d 702, several males were standing around a car in an area known for high drug activity. As the officers approached, the men scattered and ran. In holding that evidence obtained after the detention of one of the men should be suppressed, the court observed that:
 It is not illegal for four males to assemble by a car and engage the occupant in conversation. * * * It is not unreasonable for a young, black male living in a neighborhood with drug sales and liable to be stopped to run when approached by a police car whose officers assume a drug sale whenever someone speaks to someone in a car and believe the mere act of congregating justified a seizure.
 This is not to deny the reality the officers face in combating the drug sellers. But although drugs are often sold to occupants of cars by people who gather near them it is just as likely that those merely by a car are engaged in an innocent activity as it is that they are engaged in an illegal one.
Id. at 658-59. Accord, State v. Fincher (1991), 76 Ohio App.3d 721,726, motion for leave to appeal overruled (1992),63 Ohio St.3d 1428. We do not disagree with these general statements, but find the circumstances of the present case sufficiently distinguishable. Again, unlike Arrington, the police in this case set up surveillance at Mountcrest Court in response to citizen complaints about drug trafficking at that location. When the police saw transactions occurring that were typical of drug sales, together with some other suspicious activity, they had a reasonable, articulable suspicion for making a stop.
We find that the trial court's resolution of the factual questions was supported by competent, credible evidence and the trial court's decision was legally correct. See, Ornelas v.United States, 116 S.Ct. 1657 (1996). Accordingly, the first assignment of error is overruled.
 II
In the second assignment of error, Hagler contends that the verdict was not supported by competent, credible evidence because no reasonable trier of fact could have found beyond a reasonable doubt that all the elements in the indictment were proven. The sole ground for this contention is some confusion during Officer Louderback's testimony about the date on which the crime occurred. Specifically, the prosecutor at one point directed Louderback's attention to "Sunday, January, 1997." This was followed later by a question from the prosecutor about Louderback's observations on "Sunday, March 23," and still later by a reference to "March 21." However, the date alleged in the indictment was March 23, 1997.
After examining the transcript, we find that the defense argument borders on the frivolous. No real dispute existed about the date of the arrest. For example, Officer House testified during the prosecution case and was specifically asked to testify about the arrest of Hagler on March 23, 1997. Additional references to the correct date were made during the defense's examination of its own witness, Darryl Hart. Furthermore, no objection was made below to any alleged confusion in dates. Because the date of the offense was proven beyond a reasonable doubt, we find that the second assignment of error has no merit.
 III
In the third assignment of error, Hagler claims that the trial court erred in denying a requested cautionary instruction on the use of "other acts" evidence. As we mentioned earlier, the court admitted evidence that Hagler had a baggie containing marijuana in his pocket at the time he was arrested. Before the trial began, the defense moved to exclude any evidence about the marijuana, but the court overruled the objection, reasoning that the evidence should be admitted for the limited purpose of showing intent or knowledge concerning possession of the crack cocaine. Based on the court's ruling, the State elicited testimony from the arresting officer about the marijuana. Further, the State asked a defense witness if the witness knew that Hagler had marijuana on the day of the arrest.
Evid. R. 404(B) allows evidence of other acts to be admitted to prove matters like motive, intent, knowledge, or absence of mistake or accident. In this case, Hagler was charged with violating R.C. 2925.11(A), which states that "[n]o person shall knowingly obtain, possess, or use a controlled substance." As a result, "other acts" would be admissible to show Hagler's knowledge or intent, if Hagler placed his intent in issue. Statev. McDaniel, (Aug. 19 1992), Clark App. No. 2853, unreported. This in fact, was what occurred.
At trial, Hagler's position was that he was at 830 Mountcrest with his girlfriend and several other people on the night in question, and had no involvement with cocaine. Hagler's version was that about an hour before the arrest, his girlfriend left in her car with a friend to go to a comedy club, leaving Hagler without transportation. Hagler wanted to call a cab, but was not able to because the owner of the apartment was using the phone. Consequently, Hagler asked Darryl Hart (the driver of the dark Monte Carlo) for a ride home. Shortly after Hagler got in the car, it was surrounded by police and the arrest occurred.
Some of the trial testimony corroborated parts of Hagler's story. There was no real dispute at trial about the fact that Hagler was not the black male who was seen by police getting in and out of the dark Monte Carlo. Instead, that individual was Giovannis Barber, who was sitting in the front passenger seat of the Monte Carlo. According to Darryl Hart (the driver of the dark Monte Carlo), Barber was the owner of the car. Hart further testified that on the night of Hagler's arrest, he and Barber had been riding around for about five hours, and were the only two people in the car. Eventually, they ended up at 652 Mountcrest and parked. At that point, Barber got out of the car to talk to a girl. After staying for a second, the two men pulled around to the 800 block and backed into a parking space. Hart then sat in the car for fifteen or twenty minutes. About ten minutes after Barber and Hart arrived, Hagler asked Hart (who had known Hagler for about five years) for a ride home. When Hart agreed, Hagler got in the car. Hart, of course, testified that neither he nor Barber had any drugs in the car.
Hagler did not testify at trial, but two people present that night at 830 Mountcrest did testify. They both said that Hagler was at the apartment for several hours before he was arrested. Further, they corroborated the fact that Hagler's girlfriend left to go to a club, and that Hagler wanted to use the phone to call a cab, but was unable to do so because the owner of the apartment refused to get off the phone. Both individuals also denied seeing Hagler with cocaine before the arrest. Their testimony did indicate, however, that Hagler was in the Monte Carlo for as long as ten minutes before the police surrounded the car. Additionally, the testimony of one of these witnesses placed Barber in the apartment with Hagler before Hagler entered the car. Based on the testimony, Hagler's intent or knowledge was placed squarely at issue. Hagler could have been an innocent bystander, as he contended. Alternatively, Hagler could have been an active participant, since he knew Barber and Hart, and was inside the car for some time before the police arrived.
Before the jury was instructed, Hagler proposed the following instruction, purportedly based on Evid R. 404(B) and State v.DeMarco (1987), 31 Ohio St.3d 191:
 You have heard the evidence that Mr. Hagler possessed marijuana at this time that he was arrested. You are instructed that possession of marijuana may not be considered by you as proof that Mr. Hagler possessed cocaine at that time.
The court rejected this instruction because it did not fully and accurately describe the law. Instead, the court gave the following instruction, taken largely from 4 Ohio Jury Instructions (1993), Section 402.61:
 Evidence was received about the commission of the act of possession of marijuana which is an offense other than the offense with which the defendant is charged in this trial. That evidence was received only for a limited purpose. It was not received and you may not consider it to prove the character of the defendant in order to show that he acted in conformity or in accordance with that character.
 If you find that the evidence of the other act is true and that the defendant committed it, you may consider that evidence only for the purpose of deciding whether it proves the defendant's intent or knowledge or purpose to commit the offense charged this this [sic] trial. That evidence cannot be considered for any other purpose.
As an initial point, we note that in DeMarco, the Ohio Supreme Court dealt with the admissibility of "other acts" evidence, not with how the jury should be instructed when such evidence is admitted. In DeMarco, the court said that evidence of other acts is admissible only when it: 1) tends to prove one of the matters in either R.C. 2954.59 or Evid.R. 404 (B), i.e., intent, lack of mistake, etc.; and 2) is relevant to prove that the defendant is guilty of the offense in question.31 Ohio St.3d at 194. The court did not, however, discuss jury instructions, nor were instructions at issue in the case. Technically, then, the case cited by defense counsel did not support the statement of law cited in the defense instruction.
On the other hand, "trial courts are required to include the substance of submitted proposed jury instructions when they are correct and pertinent. * * * A jury instruction is proper when it adequately informs the jury of the law." State v. Rockwell
(1992), 80 Ohio App.3d 157, 169. Therefore, even if the case cited by the defense did not support the cited instruction, the court could have chosen to give the substance of the instruction if it adequately informed the jury of the law.
In this regard, we agree with the trial court that the defense instruction did not adequately tell the jury the applicable law. While the instruction does correctly say possession of marijuana could not be considered as proof that Hagler possessed cocaine, the instruction failed to tell the jury how the evidence might be considered. As we noted in State v.Lewis (1990), 66 Ohio App.3d 37, motion for leave to appeal overruled, 55 Ohio St.3d 703, "[t]he purpose of instructing the jury at all is to provide them with a legal framework within which to make their factual determinations. The jury should not be left to its own resources to postulate matters of law." Id. at 43-44. As given by the court, the instruction told the jury that the marijuana evidence could be considered for the purpose of deciding if the evidence proved Hagler's intent, knowledge, or purpose to commit the crime of possession of cocaine. This was an important point omitted by Hagler's proposed instruction. The court then went on to tell the jury that the evidence could not be considered for any other purpose. Thus, although the specific words submitted by the defense were not used, the court's own instruction conveyed the substance of the proposed instruction, while providing the jury with additional needed guidance.
In light of the preceding discussion, we find no error in the court's failure to give the cautionary instruction proposed by the defense. Accordingly, the third assignment of error is without merit and is overruled.
 IV
The final assignment of error raises the issue of ineffective assistance of trial counsel. In this regard, Hagler contends counsel was ineffective in failing to call material witnesses. Hagler points out that the trial court granted a motion to issue material witness warrants, but counsel then failed to call the witnesses. Additionally, Hagler notes that the witnesses would have testified that they were with Hagler all weekend, and that he did not have crack cocaine.
The law is well-settled that:
 Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.
State v. Bradley (1989), 42 Ohio St.3d 136, 137, syllabus 2 (citations omitted). Further, to show prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id. at syllabus 3.
In the present case, the record shows no error on the part of trial counsel. As was appropriate, counsel asked for material witness warrants for two witnesses who had been subpoenaed. These witnesses were Hagler's girlfriend, Angela Hines, and Angela's friend, Latika Larry. According to the representations of defense counsel at the time the warrants were requested, Hines and Larry had been with Hagler throughout the weekend, and had taken Hagler to 830 Mountcrest. However, within an hour of the arrest, Hines and Larry left to go to a comedy club, leaving Hagler behind. During the time Hines was with Hagler, she did not see him with any cocaine. Based on this description of the testimony, the court agreed to issue warrants.
After the warrants were issued, two defense witnesses testified. These witnesses had been at 830 Mountcrest with Hagler before his arrest. As we already mentioned, both witnesses essentially corroborated Hagler's story about the events at Mountcrest, and both denied seeing Hagler with any cocaine. After these witnesses testified, defense counsel told the court, on the record, that Hagler had agreed to withdraw the warrants and not go forward with any other witnesses. Upon being questioned directly by the court about this point, Hagler confirmed that he did not want to call Hines or Larry. At that point, the defense rested, because Hagler also did not want to testify.
Under the circumstances, we see no departure from objective standards of representation. The testimony of Hines and Larry was cumulative, and also would not have strengthened the defense case. Specifically, Hines and Larry left before the relevant events occurred. We find nothing unreasonable in eliminating unneeded testimony. Moreover, even if counsel should have called these witnesses, his failure to do so did not prejudice Hagler. As we implied earlier, the pertinent issue was not whether Hagler was in the car when it originally arrived at the apartment complex, nor was it how Hagler came to be in the car at the time of the arrest. Instead, the relevant issue was whether Hagler possessed cocaine when he was arrested. Part of this equation was whether Hagler had an opportunity to have possession.
According to the evidence of the defense witnesses, Hart (the driver of the dark Monte Carlo), had known Hagler for about five years before the arrest. Before Hagler got into the Monte Carlo, Barber (the other occupant of the car), came into the apartment where Hagler was visiting. Subsequently, Barber and Hagler left the apartment. Hagler then got into the Monte Carlo and was in the car for up to ten minutes before the police arrived. Thus, even assuming the truth of Hagler's story about the earlier events of the evening, Hagler had ample opportunity to obtain possession of crack cocaine from Barber or Hart, if they originally had the cocaine. In the alternative, Hagler could have obtained cocaine before Barber and Hart arrived, from unknown persons. This alternative possibility is not one that can be eliminated by the failure of others to see Hagler with cocaine. A final possibility was that Hagler was innocent, but that was for the jury to decide.
Based on the above analysis, we see no error on trial counsel's part, nor do we find prejudice in his failure to call the witnesses for whom material witness warrants had been issued. Accordingly, the fourth assignment of error is without merit and is overruled.
In view of the preceding discussion, the judgment of the trial court is affirmed.
FAIN, J., and YOUNG, J., concur.
Copies mailed to:
Karyn J. Lynn
Anthony F. Comunale
Hon. Dennis Langer